MERCER COUNTY CIRCUIT COURT.

HIGHTSTOWN TRUST COMPANY, PLAINTIFF, v. AMERICAN EQUITY CORPORATION, VERNON L. BUCHMAN, H. D. GORDON AND J. A. FRASER, DEFENDANTS.

For the plaintiff, *Theodore Backes* and *Herbert W. Backes.*

For the defendants, *Frederic R. Brace* and *W. Holt Apgar.*

OLIPHANT, J.   This is a suit by Hightstown Trust Company as plaintiff, against American Equity Corporation, Vernon L. Buchman, H. D. Gordon and J. A. Fraser, as defendants, in the sum of $4,500 with interest and protest fees, based upon a promissory note in the following tenor:

"June 21st, 1927.
$4,500.00

Three months after date we promise to pay to the order of Vernon L. Buchman, H. D. Gordon and J. A. Fraser, Forty-five hundred dollars, at Hightstown Trust Company, Hightstown, New Jersey.

Value received.

American Equity Corporation,
VERNON L. BUCHMAN, *Pres.*
J. A. FRASER, *Treas.*

No. 701                    Due Sept. 21st
                    (Endorsed)
                        VERNON L. BUCHMAN,
                        H. D. GORDON,
                        J. A. FRASER,
                        American Equity Corporation,
                        VERNON L. BUCHMAN, *President*.
                        J. A. FRASER, *Treasurer.*"

The defendant corporation maintained a bank account with the plaintiff company and had a line of credit of $10,000. A resolution of the board of directors, on file with the bank, provided that all checks must be signed by any two of the three officers of the corporation, who are the three individual defendants.

In June, 1927, Fraser, the treasurer of the corporation, sent the note in suit to Buchman, the president of the corporation, at Wilkes-Barre, Pennsylvania, for his endorsement, explaining that it was a renewal of one for $5,000. Buchman signed the note as president of the corporation and endorsed it both individually and as president, and returned it. Gordon claims he never endorsed it or saw it until its authenticity was questioned. It was presented to the bank which discounted it and placed the proceeds thereof, $4,431, to the credit of the corporation on June 22d, 1927.

According to the bank records the exact amount of the proceeds of the note was withdrawn from the account of the corporation, as follows: On June 21st, $2,000; June 24th, $431; July 7th, $1,000, and July 19th, $1,000. Gordon and Buchman say that they never signed checks in these amounts on or about these dates, nor did they sign checks in blank. Fraser disappeared and after his disappearance four blank checks from the back of the corporation check book were found missing. There is no explanation of how the money was withdrawn. The bank regularly sent statements to the corporation, but the one showing a credit of $4,431 and the withdrawals before mentioned had been doctored and these items erased. The corporation had its books regularly audited

and at the first audit after the 21st of June the discrepancies were discovered and immediately reported to the bank. The four checks above referred to were not among those returned nor examined by the auditors, and no explanation has been made in regard to them.

The plaintiff bank contents itself with showing on its own case an arbitrary charge against the American Equity Corporation account of the four items aggregating $4,431.

The defendants say that the plaintiff is not a holder for value, that it is not a holder in due course, that it paid no consideration for the note in suit, and that the defendant corporation received no consideration therefor.

No case directly in point has been furnished me by counsel, and after much research I have been able to discover none in this state; but the great weight of authority from other states, and the sounder rule, seems to be that "a bank giving credit for the amount of a note is not a holder in due course when such credit is not absorbed by the antecedent indebtedness or exhausted by subsequent withdrawals. 22 *L. R. A.* 718; and *Brannans Negotiable Instrument Law, page* 386, and cases therein cited. The question is also exhaustively considered in 6 *A. L. R.* 252, wherein it is stated that the courts in this country almost without exception have followed the rule above set forth.

It might be argued that there were subsequent withdrawals from the proceeds of the note, but the evidence clearly shows, and I am satisfied, that if there were withdrawals they were by means of forged checks, forged both as to maker and payee.

"The relation between a bank and its depositor is that of debtor and creditor, and the implied contract on the part of the bank is that it will disburse the money standing to the credit of the depositor only on his order, and in conformity with his directions. When, therefore, it makes a payment upon a check to which the depositor's name has been forged, * * * it must be held to have paid out of its own funds, and cannot charge the amount against the depositor, unless it shows a right to do so on the doctrine of estoppel, or because of some negligence chargeable to the depositor." *Mechanics National Bank* v. *Harter,* 63 *N. J. L.* 578.

Neither of these theories is open for use by the plaintiff under the facts as established by it in this case. Also see *Camden Safe Deposit Co.* v. *Lord et al.,* 67 *N. J. Eq.* 489.

I therefore determine that the plaintiff bank was not a holder for value or a holder in due course, and that any charges against the account of the defendant corporation were improperly made.

There are several other questions involved, but under the circumstances the court need not consider them.

A verdict of no cause of action must be returned in favor of the defendants and against the plaintiff.